IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| SAMANTHA R. MCCAFFERTY, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| UNIVERSITY OF NEBRASKA MEDICAL CENTER; a Political Subdivision, and | ) ) ) | **COMPLAINT AND JURY DEMAND** |
| | ) | |
| BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA, A Political Subdivision, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, SAMANTHA R. MCCAFFERTY, by and through her attorneys, and for her causes of action against the Defendants hereby states the following:

**PARTIES-VENUE-JURISDICTION**

1. Plaintiff SAMANTHA R. MCCAFFERTY, is a resident of Omaha, Douglas County, Nebraska.

2. Defendant UNIVERSITY OF NEBRASKA MEDICAL CENTER has continuously been a political subdivision doing business in Omaha, Douglas County, Nebraska.

3. Defendant BOARD OF REGENTS OF THE UNIVERSITY OF NEBRASKA has continuously been a political subdivision doing business in Omaha, Douglas County, Nebraska.

4. This Court has original jurisdiction over the claims arising under Federal law and concurrent jurisdiction over the state law claims. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331 and the Court's pendent claim jurisdiction under 28 U.S.C. §1367(a).

5. Venue is appropriate in this District under 28 U.S.C. §§1391(b) and (c).

6. On April 19, 2024, Plaintiff filed a charge of discrimination with both the Nebraska

1

Equal Opportunity Commission (NEB 1-23/24-4-54405-RS) and the U.S. Equal Employment Opportunity Commission (32E-2024-00496) alleging disability discrimination and retaliation under federal and state law.

7. On or about May 13, 2025, less than 90 days prior to the filing of this Complaint, Plaintiff received the Nebraska Equal Opportunity Commission's determination with respect to Plaintiff's charges, NEB 1-23/24-4-54405-RS.

8. On or about June 10, 2025, less than 90 days prior to the filing of this Complaint, Plaintiff received a Notice of Right to Sue from the U.S. Equal Employment Opportunity Commission on charge number 32E-2024-00496.

## FACTUAL BACKGROUND

9. Plaintiff Samantha R. McCafferty (hereinafter referred to as "McCafferty") commenced employment with Defendants University of Nebraska Medical Center and Board of Regents of the University of Nebraska, (hereinafter collectively referred to as "UNMC") on or about March 27, 2022. Most recently, McCafferty was employed by UNMC as an Administrative Business Associate in the Pancreatic Cancer Center.

10. During the time McCafferty was employed with UNMC, she suffered from physical and mental impairments, including chronic migraines, bipolar disorder, anxiety and depression, which substantially limited her daily life activities of sleeping, eating, concentrating, memory, communicating and bodily functions of her vision, nervous and brain systems.

11. McCafferty's supervisors, and the Human Resources Department were aware of McCafferty's disabilities, as were her coworkers, because they all had conversations with McCafferty about her need for disability accommodations. In addition, McCafferty had submitted a written request for reasonable accommodation and Human Resources approved the requested

when Plaintiff worked for UNMC's Public Health Department.

12. During the time McCafferty was employed by UNMC, she also applied for and was approved for FMLA for her medical appointments and other time off work necessitated by her serious medical conditions.

13. While McCafferty worked for Debbie O'Malley at the Pancreatic Cancer Center, O'Malley was aware of McCafferty's disabilities and FMLA leave as McCafferty would need to submit the FMLA time to O'Malley for approval. O'Malley reacted negatively when McCafferty reported her FMLA.

14. McCafferty did not apply for the position in the Pancreatic Cancer Center. Rather, O'Malley and Dr. Sunil Hingorani, Department Director, (hereinafter Hingorani) approached McCafferty through a recruiter and offered her the position. The positions was advertised as a hybrid position, where employees were permitted to work from home.

15. During the recruitment period, McCafferty explained that due to her disabilities, she would need time off for doctor appointments and would need the flexibility to work from home from time to time to care for herself or her son. McCafferty was told that those accommodations were no problem so long as she got her work done. McCafferty was also promised that she would have an office to herself so she could regulate the lights, which was one of her requested accommodations.

16. McCafferty began working in UNMC's Pancreatic Cancer Center on or about November 27, 2023.

17. When McCafferty began working in the Pancreatic Cancer Center, despite previous assurances, O'Malley assigned her to work in a room with another person, who continually turned the lights up when McCafferty needed them turned down in order to manage her medical condition.

18. When McCafferty spoke with Human Resources regarding her approved accommodations, she was told she needed to restart the process of having the accommodations approved again. McCafferty obtained the forms, completed them, and returned them to Human Resources for a second time. McCafferty heard nothing further from Human Resources regarding the requested accommodations.

19. On January 11, 2024, McCafferty was told by O'Malley and Hingorani that her performance and attendance were substandard. McCafferty reminded them of the previous conversation about needing family medical leave and they said, "You're gone all the time." McCafferty again explained her need to care for herself and her son. McCafferty reminded them that she often made up the time she was gone by working late even when she wasn't required to when she was on FMLA. O'Malley then proceeded to yell at her for 1.5 hours, gave her a verbal warning and followed up with a written warning four days later.

20. McCafferty reached out to Human Resources again, and this time reported the harassment in the January 11th meeting and the retaliatory written warning. To the best of McCafferty's knowledge, Human Resources did nothing except suggest that maybe she should look for a new position.

21. Following the January 11th meeting, O'Malley took away all of McCafferty's duties and assignments. Hingorani, from that point on, would not talk to McCafferty and cancelled all of the scheduled appointments between McCafferty and Hingorani that had already been on the calendar.

22. O'Malley also began harassing McCafferty by calling her into her office every morning to start the day by telling McCafferty all of the things she had done wrong the day before. Examples of tasks done incorrectly included, but were not limited to, wording emails incorrectly,

and telling McCafferty she wasn't allowed to touch the calendars, but then accusing McCafferty of failing to calendar events.

23. During these morning meetings, O'Malley told McCafferty if she kept taking time off and making mistakes she would be fired. O'Malley continued to give McCafferty written verbal warnings for making small errors on inconsequential duties, while not allowing McCafferty to perform her real duties.

24. Originally in this position, O'Malley had told McCafferty that she would do HR training, but this never happened because O'Malley kept McCafferty busy doing duties outside of her job description. O'Malley also denied McCafferty's request to attend Gallup Strength training with her coworkers who were not disabled or on FMLA.

25. On February 2, 2024, McCafferty was out of the office due to illness.

26. On February 2, 2024, her position was posted to the UNMC careers board.

27. On or about February 5, 2024, McCafferty complained to human resources about harassment and retaliation from O'Malley and Hingorani, along with her job being posted.

28. On March 5, 2024, McCafferty received notice that she was being terminated as of March 19, 2024, but no reason was given.

29. Prior to termination, Plaintiff's job performance was satisfactory.

30. At the time of her termination, Plaintiff earned approximately $70,000.00 annually working at least 40 hours per week. As part of her compensation, Plaintiff also was eligible to receive fringe benefits in amount that is currently unknown to Plaintiff and will be subject to further discovery. As of the date of this filing, Plaintiff's lost wages resulting from Defendants' wrongful conduct are in excess of $97,000.00.

31. As a result of Defendants' wrongful conduct, Plaintiff suffered lost wages,

compensatory damages, including emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and has also incurred attorney's fees and other costs that are continuing.

## COUNT I

## DISABILITY DISCRIMINATION

### Neb. Rev. Stat. §48-1104 ("NEFEPA")

32. Plaintiff hereby incorporates paragraphs 1 through 31 as if fully set forth herein and states:

33. Defendants were at all times material an "employer" within the meaning of under Neb. Rev. Stat. §48-1102.

34. Plaintiff is and was disabled within the meaning of the NEFEPA.

35. Defendants regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

36. Plaintiff was qualified to perform the essential functions of the job, with or without accommodation.

37. Defendants discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to harassing Plaintiff about her disability and termination of her employment.

38. Defendants failed to accommodate Plaintiff's disability in violation of the NEFEPA.

39. Defendants failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the NEFEPA.

40. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

41. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT II

## DISABILITY DISCRIMINATION

## 42 U.S.C. §§12101 et seq. ("ADA")

42. Plaintiff hereby incorporates paragraphs 1 through 41 as if fully set forth herein and states:

43. Defendants were at all times material an "employer" within the meaning of under 42 U.S.C. §12111.

44. Plaintiff is and was disabled within the meaning of the ADA, as amended.

45. Defendants regarded Plaintiff as disabled by an actual or perceived impairment that substantially limits a major life activity.

46. At all times relevant, Plaintiff suffered from an impairment that substantially limited one or more of her major life activities and major bodily functions.

47. At all times relevant, Plaintiff was able to perform the essential functions of her job, with or without reasonable accommodation.

48. Defendants discriminated against Plaintiff because of her disability and altered a term, condition, and/or privilege of her employment, including but not limited to harassing Plaintiff about her disability and termination of her employment.

49. Defendants failed to accommodate Plaintiff's disability in violation of the ADA.

50. Defendants failed to engage in good faith in an interactive process with Plaintiff to assist her in accommodating her disability in violation of the ADA.

51. Plaintiff's disability was a motivating factor in such discrimination, failure to accommodate and failure to engage in the interactive process.

52. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendants are subject to punitive damages.

53. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNTS III AND IV

## RETALIATION

### 42 U.S.C. §12203 and Neb. Rev. Stat. §48-1114

54. Plaintiff hereby incorporates paragraphs 1 through 53 as if fully set forth herein and states:

55. During her employment, Plaintiff engaged in protected activity, including but not limited to exercising her rights under the ADA and NEFEPA, by requesting disability accommodations and making internal complaints about disability harassment and discrimination.

56. Defendants took adverse employment action against Plaintiff, including but not limited to subjecting her to harassment and terminating her employment.

57. There is a causal connection between Plaintiff's participation in protected activity and Defendants' adverse action against her.

58. The unlawful employment practices complained of above were malicious or recklessly indifferent to Plaintiff's rights as protected by Federal law, and by its conduct Defendants are subject to punitive damages.

59. As a result of Defendants' retaliation, Plaintiff has in the past and will in the future suffer injuries and damages, including, but not limited to mental and emotional distress; humiliation; fear, embarrassment; lost enjoyment of life; lost wages and benefits; front pay and other emoluments of employment.

## COUNT V

## VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT

### 29 U.S.C. 2601 et seq.

60. Plaintiff hereby incorporates paragraphs 1 through 59 as if fully set forth herein and states:

61. Defendants were at all times material an "employer" within the meaning of the Family Medical Leave Act.

62. Plaintiff is and was at all times material an "eligible employee" within the meaning of the Family Medical Leave Act.

63. During her employment, Plaintiff suffered from one or more "serious health conditions" within the meaning of the Family Medical Leave Act.

64. Plaintiff was entitled to a leave of absence pursuant to her rights under the Family Medical Leave Act.

65. Plaintiff invoked her right to a leave of absence under the Family Medical Leave Act.

66. Defendants failed to restore Plaintiff to the same job or to an equivalent job upon returning from protected leave.

67. Defendants interfered with Plaintiff's right to take leave under the Family Medical Leave Act by harassing her about her leave, giving her negative performance reviews, denying her leave and in other ways to be proven at trial.

68. Defendants retaliated against Plaintiff by giving Plaintiff negative performance reviews, disciplining her, terminating Plaintiff for exercising her rights under the Family Medical Leave Act and other ways to be determined by trial.

69. As a result of defendants' acts and omissions, Plaintiff has in the past, and will in the future, suffer damages including, but not limited to, lost wages, benefits, future earnings, liquidated damages, and other emoluments of employment.

## DAMAGES

70. Plaintiff hereby incorporates by reference paragraphs 1 through 69 and states:

71. As a result of Defendants' discrimination, retaliation, and FMLA violations, Plaintiff has suffered damages and seeks the following relief:

    a. Lost wages and benefits to the time of trial;

    b. Front pay;

    c. Liquidated damages under FMLA;

    d. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses;

    e. Tax gross-up on economic damages to offset the increased tax on any economic damages award;

  f. Punitive damages under Federal law;

  g. Attorney's fees, expert witness fees and other reasonable costs; and,

  h. Pre-judgment and post judgment interest.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount which will fully and fairly compensate her for her injuries and damages, for all her general, special, and punitive damages, for costs, attorney's fees, interest and for such other relief as just and equitable.

Plaintiff demands a trial by jury.

Dated: August 6, 2025.

            SAMANTHA R. MCCAFFERTY,
            Plaintiff

      BY: s/ Jennifer Turco Meyer
         Jennifer Turco Meyer, 23760
         Turco Meyer Law, LLC
         4309 South 174th Avenue
         Omaha, Nebraska 68135
         (402) 577-0252
         jennifer@turcomeyer.law
         Attorney for Plaintiff